OBERMAN & CO., Inc., v. PRATT et al.

No. 2827.

District Court, W. D. Missouri, W. D.

Oct. 8, 1936.

Mann, Mann & Miller, of Springfield, Mo., and Ragland, Otto & Potter, of Jefferson City, Mo., for plaintiff.

Robert B. Watts, of Washington, D. C., for defendants.

REEVES, District Judge.

By its bill the plaintiff seeks a permanent injunction and a declaratory judgment. The only matter for consideration now, however, is that of a temporary injunction. Heretofore a temporary restraining order was issued and the status quo is now being maintained by the order. The defendants not only resist the application for a temporary injunction, but they have filed their motion to dismiss the bill. Moreover, the nonresident defendants have challenged the validity of process served upon them. The defendant George O. Pratt is the only resident defendant.

The suit involves the constitutional validity of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C. § 151 et seq. (29 U.S.C.A. § 151 et seq.). The plaintiff is a corporation of the state of Missouri, and is engaged in the manufacture of men's pants at two factories in the state of Missouri, one in Springfield, and the other in Jefferson City. The manufactured product is sold to jobbers and retailers. A portion of such products is introduced into interstate commerce.

Plaintiff was so engaged at its two factories on the 13th of April, 1936, at which time it was served with a notice by George O. Pratt, Acting Regional Director, National Labor Relations Board of the Fourteenth Region. This notice required plaintiff to answer a complaint made by said board at a hearing to be held in Springfield on the 22d day of April, 1936. Such complaint was predicated upon a charge made by United Garment Workers of America, Local Union No. 216, that the plaintiff "has engaged in and is now engaging in certain unfair labor practices affecting commerce as set forth and defined in the National Labor Relations Act."

The complaint so filed by the regional director contained specifications of charges of acts committed by the plaintiff which the director characterized as unfair labor practices within the purview of the act. The proceeding was conformable to the act of Congress, and the complaint filed was sufficient to invoke all the rights and powers of visitation and inquisition attempted to be conferred by that act.

The plaintiff seeks to enjoin the proceeding upon the several grounds: (a) That the plaintiff being engaged in purely intrastate business, it was not within the power of the Congress to enact or provide for regulatory measures in respect to its business; and (b) that a proceeding upon the complaint would greatly prejudice the business of the plaintiff, and that from the interruptions and the trespasses upon its factory operations it would suffer irreparable injury.

There was a proper averment of lack of adequate remedy at law. While the regional director by affidavit disclaimed any purpose to invade the rights of the plaintiff, or to intrude upon its factory operations, nevertheless the bill discloses that since the regional director has invoked the law under a complaint by no means narrow in its charges, the director would necessarily invade the rights of the plaintiff and would occasion irreparable injury unless the acts of the regional director were done under a valid law. The bill is verified and contains the only statement of facts for consideration.

1. It has been held so often that manufacturing and mining do not constitute interstate commerce that the citation of authorities seems unnecessary. However, the child labor case of Hammer v. Dagenhart et al., 247 U.S. 251, 38 S.Ct. 529, 62 L.Ed. 1101, 3 A.L.R. 649, Ann.Cas. 1918E, 724, is typical, as well as the more recent case of Schechter v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947.

2. Neither the Congress by a declared policy nor the regional director by the averments of the complaint could bring manufacturing operations of the plaintiff within the congressional power to regulate interstate commerce. The regional director by his complaint sought to invoke the application of cases dealing with the stream or current of commerce, such as Swift & Company v. United States, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518; Lemke v. Farmers' Grain Co., 258 U.S. 50, 42 S.Ct. 244, 66 L.Ed. 458; Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229.

This could not be done because such averments could not take the plaintiff out of its proper classification as an intrastate corporation and subject it to rules in interstate commerce.

3. Neither could the regional director invoke the application of labor cases such as Coronado Coal Co. v. United Mine Workers, 268 U.S. 295, 45 S.Ct. 551, 69 L.Ed. 963, for the reason that the decisions in those cases, as well as the stream of commerce cases, rest entirely upon the circumstance that interstate commerce was directly and immediately involved.

4. Since the petition was verified, and in view of the circumstances that all the exhibits attached thereto, as well as the affidavit of the regional director, show that the facts stated in the petition are true, it becomes obvious that the defendants are seeking to exercise a visitorial and inquisitorial power upon a local business and one not subject to the regulatory authority of Congress under its power to regulate commerce among the states. And, moreover, if permitted to proceed with their inquiry, a great and lasting injury would accrue to the plaintiff, and it is without remedy except through this injunctional proceeding.

The identical question was determined in the Northern District of Oklahoma in the case of Eagle-Picher Lead Company et al. v. Madden et al. (D.C.) 15 F.Supp. 407. The opinion was filed by United States District Judge Kennamer, on June 18, 1936.

Also the matter was covered in Stout v. Pratt (D.C.) 12 F.Supp. 864, in which case my associate, Judge Otis, very carefully pointed out the reasons why the congressional act should not apply to intrastate commerce, even though the employment of labor was involved. Moreover, the opinion of Judge Otis was affirmed by the Circuit Court of Appeals by opinion filed August 5, 1936. 85 F.(2d) 172, 178. While the Court of Appeals refrained from passing on the constitutionality of the act, being moved with a high sense of abstract justice, yet, nevertheless, the court volunteered: "Another grave question presented by this suit is whether the curtailment of the right of an employer, who is subject to the act, to bargain individually with his employees or such of his employees as are willing to so bargain with him, as well as the curtailment of the right of employees to bargain individually with their employer, does not render the act null and void because of its apparent conflict with the due process clause of the Fifth Amendment of the Constitution of the United States. That this clause protects freedom of contract has long been settled. The last expression of the Supreme Court on that subject is contained in the case of Morehead v. People ex rel. Tipaldo [298 U.S. 587] 56 S.Ct. 918, 923, 80 L.Ed. 1360 [103 A.L.R. 1445], opinion filed June 1, 1936."

The case mentioned by the Circuit Court of Appeals was the New York minimum wage case. Moreover, from practically identical facts as in the case at bar, the court said: "That the injury to the appellees would be certain, substantial, and immediate if a temporary injunction were not granted is apparent from the findings which the trial court has made. That the injury to the appellants from the granting of the temporary injunction will be inconsequential is clear."

Upon all of the authorities, the plaintiff, being engaged in purely intrastate business, is immune from the supervision and regulation of the National Labor Relations Board, and a temporary injunction should be granted.

The Fourth Circuit Court of Appeals, in National Labor Relations Board v.

Washington, Virginia and Maryland Coach Company, 85 F.(2d) 990, has just reached the same conclusion.

Counsel for plaintiff will prepare a proper decree.